IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION


| | | |
|---|---|---|
| ANTHONY GREEN; | * | |
| MOVANT; | * | **07 C 50 247** |
| | * | CIVIL ACTION NO.:_____ |
| vs. | * | [03-CR-50031] |
| | * | |
| UNITED STATES OF AMERICA; | * | |
| RESPONDENT; | * | |


MEMORANDUM OF FACT AND LAW IN SUPPORT OF MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR
CORRECT SENTENCE BY PERSON IN FEDERAL CUSTODY

COMES NOW, ANTHONY GREEN pro se, [hereafter referred to as "Movant"] and hereby moves this Honorable Court to file his Memorandum of Fact and Law in support of his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or correct Sentence by Person in Federal Custody, see Spaziano v. Singletary, 36 F.3d 1028 n.2 (11th Cir. 1994)("...the habeas rules require more than notice pleading, and some factual specificity will often be helpful, or even necessary...") incorporating by reference, in the motion in all grounds as they may apply, as though set forth in full therein, hereby making same a part thereof.

Respectfully submitted this _13th_ day of December , 2007.

_Anthony Green_
Anthony Green
Reg. No. 12450-424
FCI-Atlanta
P.O. Box 150160
Atlanta, GA 30315

## STATEMENT OF THE CASE

[A]   Course of Proceedings and Disposition in Court Below

Movant Green, along with Nelson K. Kennedy, were named in a Three Count Indictment, by a federal grand jury in this district, and charged in count one with Armed Bank Robbery, 18 U.S.C. § 2113 (a) and (d); count two with Possession of a Firearm in Relation to a Crime of Violence, 18 U.S.C. § 924(c); and count three with Felon in Possession of a Firearm. (doc. #15)

On October 17, 2003, the court granted the government's motion to sever the trials of the defendants. (doc. #45)

On January 5, 2004, Movant Green proceeded to a jury trial. (doc. #76)

On January 8, 2004, the jury convicted Movant Green on all counts. (doc. # 84)

On March 12, 2004, Green was sentenced to a term of imprisonment for 300 months as to each of counts one and three, to run concurrent, and a consecutive 84 months on count two, for a total sentence of 384 months to be followed by concurrent terms of five years supervised release as to each count. (doc. # 92)

On March 17, 2004, the court entered judgment. (doc. # 92-2)

On March 19, 2004, Green filed his timely notice of appeal. (doc. # 93)

On August 23, 2006, the Seventh Circuit Court of Appeals issued a limited remand pursuant to the procedures as set forth in United States v. Paladino, 401 F.3d 471 (7th Cir. 2005)

-2-

On August 23, 2006, Green's timely filed petition for rehearing was denied.

On January 22, 2007, Green's timely filed petition for writ of certiorari was denied, by the Supreme Court.

Green now moves this court, pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.

Green remains incarcerated on the judgment under attack.

[B]   Statement of Facts

Movant Green proceeded to a jury trial on his not guilty plea, previously entered, as to each count.

During the course of trial, the following evidence was adduced.

The government called Linda Graves [Tr. p. 268] who test-ified that on May 8, 2003, she received a note in a blue cover demanding money, that she looked up, observed the robber reach for money, that she slapped his hands, and said no, that the robber pointed a gun at her, that she backed up, the robber took three (3) bundles of money and departed the bank. [id. 283-290]  Graves further testified that the robber was Africa-Amer-ican and estimated his height as "probably about six feet" and his weight between "160-180 ponuds. [id. 280-281]  Graves test-ified that she was shown a photo array, marked as Exhibit 20, which she was unable to identify Green from that array but thought that "[n]umber three resembled the robber" because of "[t]he eyes."  [TR. 295-297]  Graves  further testified that

-3-

several weeks later, she was shown another photo array, intro-
duced as government's Exhibit 21, from which she identified the
robber from "[p]icture number four." [id.]  Graves then identified
Green in the courtroom. [id. at 298]

On Cross, Graves testified that, when viewing government's
Exhibit 21, that she was "fairly certain" the roober had been
arrested and she wanted to help the FBI. [TR. 334-337]

The government called Kandace Leitzen, head teller at the
South Street branch of Union Saving Bank. [TR. 341-342]  Leitzen
testified that on May 8, the day of the robbery, she was at her
station, heard Graves say "no", observed robber reach hand
around window and grabbed money, that she started to reach for
robber, saw gun, and stepped back. [TR. 342-345]  Leitzen further
testified that the robber was "a tall black male" wearing blue
jeans, a blue zip up jacket, black goggles and "a red cloth around
his head" called a "do-rag". [TR. 345-350]  Leitzen did not recall
the robber wearing a cap. [TR. 350-351]

On Cross, Leitzen testified that the robbery was "exciting
news in Freeport", that she discussed the robbery with her co-
workers, and specifically with Graves and other clients and cust-
omers of the bank. [TR. 351-357]  Leitzen further testified that
when Graves called 911, that she told Graves that the robber was
wearing blue jeans, a blue jacket and a do-rag. [TR. 357-358]
Leitzen could not identify the robber from either government's
Exhibits 20 or 21. [TR. 390-392]

-4-

The government called Doreen Kluck, who testified that she
was in the bank on the date of the robbery and observed the robber
wearing safety goggles, saw him grab something, heard a teller say
no, and observed the robber run. [TR. 399-406]  Kluck could not
identify the robber from government's Exhibit 20, and identified
photos nos. 4 and 6 of government's Exhibit 23, as being famil-
iar.  [TR. 403-406]

On Cross, Kluck testified that the goggles the robber wore
drew her attention, [TR. 409-410] and did not recall the robber
wearing a baseball cap. [TR. 412]

The government called William Carter, Freeport Police Officer.
[TR. 414]  Carter testified that he took the picture in photo no.
3 of government's  Exhibit 20 in 1999, that no. 3 was the photo of
Anthony Green, when he weighed 180 pounds. [TR. 414-416]

The government called Paul Hayenga, Sheriff, who testified
that photo no. 4 in government's Exhibit 21, was the photo of
Anthony Green, taken by him on May 8. [TR. 416-418]  Hayenga
identified Green in the courtroom. [id.]

The government called Albert Marney, Freeport Police Officer.
[TR. 418]  Officer Marney testified that during his investigation,
that he obtained the name of Anthony Green as a possible suspect
in the robbery and prepared government's Exhibit 20 as a result
of the information. [TR. 418-428]  Marney further testified that
Green was subsequently brought in and he noticed that Green appear-
ed thinner than in the photo used in Exhibit 20, and decided to do

-5-

another photo array. [TR. 432-33]

The government called Ron Simler, customer of the Union Savings Bank. [TR. 448]  Simler testified that, on May 8, he used the drive-through window, that he stopped to adjust his seat belt, that he noticed a man wearing "a red baseball hat' and "Levis" walking down the sidewalk, that the man stared at him, and ran into the bank.  Simler further testified that approximately thirty seconds later, he saw tha same man "running out of the bank." [TR. 448-456]

On Cross, Simler testified that the man was not wearing goggles and that he only saw the man for 15 to 30 seconds. [TR. 457-458]

The government called Michael Graves, Freeport area resident.  [TR. 461]  Michael Graves, son of Linda Graves, testified that he was driving by the bank when he saw a man standing on the yellow median wearing a blue hat and shirt and blue jeans, that photo no. 3 in Exhibit 20 was the individual due to "the eyes and the eyebrows" and that photo no. 4 in Exhibit 21 was the man he saw. [TR. 468-469]

The government called Gloria Hoefle,  retired Freeport resident. [TR. 486]  Hoefle testified that on May 8, 2003, she observed an African-American male "wearing dark clothing and a red head covering...running fast" past her home.  She was unable to identify the man from the photo spread. [TR. 486-489]

The government called Renae Bartles, a Freeport resident.

-6-

[TR. 504]  Bartles testified that, on May 8, 2003, she saw an
African-American man of medium build get in a dark gray car re-
sembling a Chevrolet Caprice in front of her home. [TR. 506-510]

The government called James Parriott, a Freeport resident.
[TR. 514] Parriott testified that he was asked by police if he
had seen "any suspicious people" in the area, that his answer
was no, that he went outside that afternoon, saw "something
blue" laying along his driveway. [TR. 517-521]  Parriott further
testified that "there was something red underneath it," that he
saw "some broked sunglasses," that he called the police. [id.]

The government called Steve Stovall, a Freeport Police
Officer. [TR. 523]  Stovall testified that he was dispatched to
Parriott's residence, that upon his arrival, he discovered a
jacket, red hat, blue sweatshirt, a loaded H&R 922 revolver,
currency, and a pair of broken sun-glasses. [TR. 538-562] Stovall
further testified that he photographed all items before moving
them. [id.]

The government called Ken Berg, supervisor at H&B Plastics
in Freeport. [TR. 568]  Berg testified that Green was a former
employee and that the plastic glasses found resembled the safe-
ty glasses issued to Green. [TR. 573-574]

The government called Robert Melton, Special Agent. [TR.
575]  Agent Melton testified that he prepared the photo array,
government's Exhibit 24, with Green being no. 4, that Exhibit 21
was a copy of front photographs of Exhiibit 24. [TR. 588-589]

-7-

Agent Melton identified Green in the courtroom [id.] and further testified that he sent the sweat shirt, do rag and baseball cap, as well as hair and saliva samples taken from Green, to an FBI lab for DNA analysis. [TR. 591-594]

The government called Jennifer Hawthorne, employee of Pierce & Associates. [TR. 626]  Hawthorne testified that she sent Green a letter advising him he was in arrears on his mortgage. [TR. 627-629]

The government called Nelson Kennedy, co-defendant of Green. [TR. 638]  Kennedy testified regarding his participation in the bank robbery on May 8, 2003, as well as to specific chain of events leading up to the robbery. [TR. 638-683]

The government called Richard Wolfe, Senior Vice President, Union Savings Bank, who testified that, on May 8, 2003, Green had an over-drawn account with the bank. [TR. 633-638]

The government called Rhonda Craig, forensic DNA examiner. Craig testified as an expert witness. [TR. 720-733]  Craig further testified that, after examining Green's DNA with DNA secured from the sweat-shirt, baseball cap, and skull wrap, that Green's DNA matched DNA secured from the baseball cap, [TR. 765] that Green's DNA did not match DNA taken from the skull cap or sweat-shirt. [TR. 750-781]

The government entered the following stipulations into the record: (i) that the bank was insured by the FDIC, (ii) that the firearm was manufactured outside of Illinois, and (iii) Green had

-8-

a felony conviction as of the date of the robbery. [TR. 807]

ARGUMENT

GROUND ONE

DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

Movant herein asserts that he was denied his Sixth Amendment right to the effective assistance of counsel, as identified by the acts or omissions set forth herein.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to have the assistance of counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has held that the Sixth Amendment right to counsel is right to effective assistance of counsel, McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970); William v. Turpin, 87 F.3d 1204 (11th Cir. 1996)("a criminal defendant is entitled to effective assistance of counsel during trial, Gideon v. Wainwright, 372 U.S. 335 (1963), during the penalty phase...Strickland v. Washington, 466 U.S. 668 (1984), and at various critical stages of a criminal prosecution where 'substantial rights of a criminal  accused may be affected,'" Mempa v. Rhay, 389 U.S. 128 (1967)(right to counsel attaches to deferred sentencing proceedings.))

It is well settled law that Strictland is the controlling legal standard for ineffective assistance of counsel claims. See William v. Taylor, 529 U.S. 362 (2000)(concluding that Strickland provided standards that were clearly established federal law applicable to ineffective assistance of counsel claims); Conner v.

-9-

McBride, 375 F.3d 643 (7th Cir. 2004); Cooper v. United States, 378 F.3d 638 (7th Cir. 2004).

To prove that counsel rendered ineffective assistance under Strickland, a defendant must demonstrate that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced just results." Id. 466 U.S. at 686.  Thus, Strickland established a two-prong standard to determine whether counsel rendered ineffective assist-ance. Id. at 687.  "First, the defendant must show that counsel's performance was deficient...Second, the defedant must show that the deficient performance prejudiced the defense." Id. at 687. To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonable-ness." Id.  To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unpro-fessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  See also Woodford v. Visciotti, 537 U.S. 19 (2002); Glover v United States, 531 U.S. 198 (2001)("any amount of actual jail time has Sixth Amendment significance," which constitutes prejudice for the purpose of Strickland test.

In raising a claim of ineffective assistance of counsel, before the district court, the prisoner must identify those "acts" or "omissions" that are alleged not to have been the result of

-10-

reasonable professional judgment.    <u>Strickland</u>, 466 U.S. at 690.

[A]    TRIAL COUNSEL WAS INEFFECTIVE WHEN FILING

MOTION TO SUPPRESS

Prior to trial, counsel for Green filed a motion to sup-

press evidence seized on May 8, 2003.

A review of the record will establish that: (i) the Search

Warrant was issued on May 9, 2003, [See Exhibits A-1 and A-2];

(ii) the Search Warrant Return and Receipt for Property Received

was executed on May 8, 2003, [See Exhibits A-3 and A-4];  (iii)

the  Evidence Recovery Log establishes a date of May 9, 2003,

[See Exhibit A-5]  The items appearing on the Receipt for Prop-

erty Received [Exhibit A-4] and the items appearing on the Evi-

dence Recovery Log [Exhibit A-5] are identicle.

Green asserts that counsel was ineffective by failing to

investigate the documents attached hereto as Exhibits A-1 through A-

5 inclusive and discover that the pertinent dates did not match.

Green further asserts that counsel was ineffective by failing to

argue that the evidence seized on "May 8, 2003 or May 9, 2003"

(advising  the court of the discrepancy and preserving the issue

for appellate review) should be excluded from trial.  As is demon-

strated by the transcripts, the government did not object to the

exclusion of the evidence seized on May 8, 2003, as no search

occurred on that date, although the same evidence appears on the

forms dated for may 8, 2003 [Exhibit 4] and for May 9, 2003.

[Exhibit 6]

-11-

Strickland requires that trial counsel bring to bear such skills and knowledge as will render the trial a reliable adversarial testing process. Id. 466 U.S. 668.  The  failure of counsel in this regard denied Green the right to file a proper suppression motion.  See Bond v. United States, 1 F.3d 631 (7th Cir. 1993) (Trial counsel's failure to file motion to suppress evidence is properly raised in petition for habeas corpus relief instead of direct appeal)

[B]  TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
     OBJECT TO THE INTRODUCTION TO GOVERNMENT'S
     EXHIBIT 20

Prior to trail, the Court denied the government's motion to use, 404(b), evidence from a previous robbery, committed on August 3, 2000, when Green was tried and acquitted. [See Exhibits B-1 through B-4]

During the course of trial, the government introduced it's Exhibit 20, which was identified as a photo array taken during the August 3, 2000 investigation and trial. [TR. 296]  Counsel did not object. [Id.]

Green submits that government's Exhibit 20 is direct evidence from the August 3, 2000 robbery and further evidence which was excluded by the court to be "greater prejudice -- the probative value of the evidence is substantially out weighed by the danger of unfair prejudice by a prior robbery." [See Exhibits B-3 and B-4]

The failure of trial counsel to investigate and object to the

-12-

introduction of government's Exhibit 20 cannot be deemed reason-
able under the circumstances and Green was prejudiced when numer-
ous witnesses, Linda Graves, [TR. 296]; William Carter, [TR. 414-
415]; Albert Marney, [TR. 428-430]; and Doreen Kluck, [TR. 403-
405] all testified regarding the viewing of government's Exhibit
20 and the identification therefrom. See Lyons v. McCotter, 770
F.2d 529 (5th Cir. 1985)(Trial counsel's failure to object to
highly inflammatory inadmissible evidence has no strategic value
and, failure to request a limiting introduction constitutes in-
effective assistance of counsel)

In United States v. Owens, 424 F.3d 649 (7th Cir. 2005) the
Seventh Circuit Court of Appeals concluded, in a case very sim-
ilar to Green's that (i) admission of evidence of prior un-
charged bank robbery was improper, (ii) evidence of the prior
robbery is not admissible under Federal Rules of Evidence 404(b),
(iii) evidence of the prior robbery is not intricately related
to charged offense, and (iv) that admission of the past bad act
evidence was not harmless error. Accordingly, the Owens Court
vacated the defendant's conviction and remanded his case for a
new trial. Id. 424 F.3d at 657. No less results should result in
Green's case. The evidence, governments Exhibit, was highly pre-
judicial and denied Green a fair trial, as envisioned by the court.

[C]   TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
      OBJECT TO TESTIMONY OF GOVERNMENT'S WITNESSES
      REGARDING GOVERNMENT'S EXHIBIT 20

-13-

During the course of trial, Linda Graves testified that pic-ure no. 3 in government's Exhibit appeared to be the robber by the "eyes" but appeared "heavier in the picture" and that picture no. 4 in government's Exhibit 21 was the robber, and subsequently identified Green in the court room. [TR. 296-298]

William Carter testified that the person depicted in Exhibit 20 was "Anthony Green" and that the picture was taken on "7-30 of 1999." [TR. 415]

Albert Marney testified that the individual depicted in Exhibit 20 at no. 3 was "Anthony Green," that he showed the photo array to Linda Graves and Kluck, that Graves picked no. 3 but said he "appeared heavier than the man she remembered from the bank." [TR. 430-434]

Doreen Kluck testified that she saw Exhibit 20 and that the "only guy that looked familiar to [her] was no. 3." [TR. 403] Kluck further testified that she saw government's Exhibit 23 and identified nos. 4 and 6 as photos of the robber.

The foregoing testimony provided the jury with a identi-fication of Green from evidence that was determined to be ex-cluded. The failure of trial counsel to object to this highly prejudicial evidence cannot be deemed reasonable under the cir-cumstances, and prejudice inured when Green was denied a fair trial. See Clark v. Duckworth, 906 F.2d 1174 (7th Cir. 1990) It is reasonably concluded, that had the testimony about government's Exhibit 20 been excluded, that a reasonable probability exists

-14-

that the jury would have acquitted Green, as no positive ident-
ification could have been made without Exhibit 20. This partic-
ularly is true in light of the fact that Green had been picked out
in Exhibit 20, with reference to different physical features,
which were correct for Exhibit 21.  Green was easily chosen from
Exhibit 21, by the witnesses, directly because their familiarity
with Exhibit 20.  A new trial is required.  See Owens, supra.

[D]  TRIAL COUNSEL WAS INEFFECTIVE BY FAILING

TO INVESTIGATE  AND TO INTERVIEW WITNESSES

Prior to trial, the government submitted it's list of wit-
nesses in Green's trial.  Trial counsel simultaneously filed the
defendant's list of possible witnesses.  Trial counsel failed com-
pletely to interview any of the possible testifying witnesses.

During the course of trial, and specifically during cross
examination, the following witnesses testified that they had
never met trial counsel and/or never discussed the case with him:
Linda Graves, TR. 313-314; Kandace Leitzen, TR. 355-356;  Doreen
Kluck, TR. 405; Albert Marney, TR. 435; Ron Simler , TR. 455;
Michael Graves, TR. 471; Gloria Hoefle, TR. 489-490; Renae
Bartles,  TR. 510; Steve Stovall, TR. 562; Jennifer Hawthorne,
TR. 630; Nelson Kennedy, TR. 673; and Rhonda Craig, TR.  781.

The failure of counsel to interview these witnesses cannot
be deemed reasonable under the circumstances, in light of the
facts to which they testified to.  Counsel had no knowledge of
the proffered testimony of the witnesses.

-15-

Green asserts that counsel should have interviewed these witnesses to ascertain their possible testimony which would have provided the opportunity to prepare for their possible testimony and to further prepare to cross examine each.  Further, Green submits that, had counsel interviewed these witnesses, impeachment evidence would have been discovered which could have been used to impeach each witness.

Detrement to Green's case, was the introduction of government's Exhibit 20 and the testimonies regarding same.  After viewing Exhibit 20, non of the witnesses could positively identify Green.  However, based on statements of these witnesses, another photographic line up was effected, to which munerous witnesses identified  Green therefrom.  Graves positively identified Green in the court room.

Had counsel interviewed these witnesses, he would have learned of the chain of events leading to the events regarding Exhibit 20 and Exhibit 21/22, prior to trial, and would have been better prepared to investigate and impeach/discredit the testimonies.

It is well established that Green had a Sixth Amendment right to cross-examination.  <u>Delaware v. Fensteres</u>, 474 U.S. 15 (1998)  This right was violated when trial counsel failed to adequately cross-examine government witnesses on relevant material issues.  "The right to counsel plays a critical role in the adversarial system embodied in the Sixth Amendment, since

-16

access to counsel's skills and knowledge is necessary to accord
defendant the 'ample opportunity to meet the case of the pros-
ecution' to which they are entitled." Strickland, 466 U.S. at
686.   Thus, "from counsel's function as  assistant to the defend-
ant derive the overreaching duty...to bring to bear such skills
and knowledge as will render the trial a reliable testing pro-
cess." Id. 466 U.S. at 689.

    The duty to investigate derives from counsel's basic func-
tion which is "'to make the adversarial testing process work in a
particular case.'" Kimmleman v. Morrison,  477 U.S. 365 (1986)
(quoting Strickland, 466 U.S. at 690) This duty includes the
obligation to investigate all witnesses who may have information
concerning his or her client's guilt or innocence. See Towns v.
Smith, 395 F.3d 251 (6th Cir. 2005)(citing Bryant v. Scott, 28
F.3d 1411, 1419  (5th Cir. 1994)(citing Henderson v. Sargent, 926
F.2d 706, 711 (8th Cir. 1991)

    In the instant case counsel's omissions denied Green a fair
trial, in that the government's case was not subjected to any re-
liable adversarial testing.  See William v. Washington, 59 F.3d
673 (7th Cir. 1995)  See also McQueen v. Swenson,  498 F.2d 207
(8th Cir. 1974)(Trial counsel's failure to conduct pretrial in-
vestigation, interview witnesses other than defendant constitutes
ineffective assistance of counsel.); Eldridge v. Atkins, 665 F.2d
228 (8th Cir. 1981)(Trial counsel's failure to interview material
witnesses which would have shown many inconsistencies in

-17-

identification would have surfaced, had counsel properly invest-
igated and interviewed said material witnesses and, as such, con-
stitutes ineffective assistance of counsel); United States v.
Tucker, 716 F.2d 576 (9th Cir. 1983)(Trial Counsel's failure to
interview government's witness constitutes ineffective assist
ance.); Williams v. Wainwright,  59 F.3d 673 (7th Cir. 1995)(Trial
counsel has a duty to investigate leads affecting the credibility
of witnesses which would serve to bolster his client's credibil-
ity and undercut the state's witnesses' testimony); Demarest v.
Price, 905 F.Supp 1435 (D. Col. 1995)(Trial counsel's failure to
investigate and interview material witness prior to trial con-
stitutes ineffective assistance of counsel.)

[E]   TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
      INVESTIGATE AND OBJECT TO THE EXPERT TESTIMONY
      OF RHONDA CRAIG

During the course of trial, Rhonda Craig testified that DNA
samples were taken from the sweat shirt, hat, skull cap and the
"referenced sampler" such as a saliva sample from  Green. With-
out objection, Craig offered her opinion that Green was the major
contributor to DNA found on the  sweat shirt, even though it was
Debra Deffenbaugh,  a FBI technician working under Craig's sup-
ervision, who actually extracted and analyzed the DNA sample from
the sweat shirt.

Green asserts that the failure to object denied him his Sixth
Amendment right to confrontation.  Specifically, Green asserts

-18-

that  trial counsel should have objected  to the hearsay testimony

of Craig on the basis that (1) same was inadmissible hearsay and

(2) the admission of same violated the Confrontation Clause.

The Sixth Amendment to The United States  Constitution says,

"In all crimanal prosecutions, the accused shall enjoy the right

...to be confronted with the witness against him." In Crawford v.

Washington, 541 U.S. 36 (2004) the Supreme Court explained that

the founding  generation  understood the right to confrontation in

the light of the Common-law tradition of "live testimony in court

subject to adversarial testing." Id. 541 U.S. at 43  The Common-

law tradition of confronting one's accuser in court  recognized

that ex parte testimony raised issues of justice and fairness.

Because testimony  is accusatory and delivered in contemplation of

criminal proceedings, it is adversarial.  An accused,  therefore,

should have the opportunity to confront adverse witnesses face to

face.  See Id. at 43-45

Moreover, if hearsay is "testimonial" that is, for example,

"made under circumstances which would lead an objective witness

reasonably to believe that the statement would be available for

use at at later trial," Crawford, 541 U.S. 36  The confronta-

tion clause  prohibits it's admission at trial unless (1) the

declarant is unavailable, and (2) the defendant has had a prior

opportunity to cross-examine the declarant.  See Id. at 59

Green asserts that, under the Confrontation Clause of the

Sixth Amendment, he had the right to confront Deffenbaugh, and

-19-

the failure of counsel cannot be deemed reasonable under the cir-
cumstances.  The only piece of evidence to which Green was determ-
ined to be a major contributor to was found on the sweat shirt.
Craig did not extract nor analyze the DNA evidence, but testified
from Deffenbaugh's reports.

Green's Sixth Amendment right to confront Deffenbaugh was
violated by counsel's failure to investigate  and object.

[F]  TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO

INVESTIGATE AND TO DEMAND REPORTS OR NOTES

PREPARED BY DEFENSE

As the Court of Appeals noted, "Green received a copy of
Craig's report in advance of trial but did not request or receive
reports or notes prepared by Deffenbagh." See United States v.
Anthony Green,  no. 04-1723 (7th Cir. Oct. 11, 2005)

Green asserts that the failure of trial counsel to secure
the reports or notes prepared by Deffenbaugh was both deficient
performance and prejudicial to Green's case.  See United States v.
Myers, 892 F.2d 642 (7th Cir. 1990)(Trial counsel's failure to
read and review documents disclosed by the government, which con-
tained potentially exculpatory materials, was ineffective assist-
ance of counsel).

Green asserst that such report and/or notes could have been
used to impeach the testimony of Craig, as her testimony was based
on the findings of Deffenbaugh, a non-testifying witness.

[G]   TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
      INVESTIGATE AND TO SECURE FINGER-PRINT ANAL-
      YSIS FROM THE FIREARM SEIZED

Movant Green asserts that trial counsel was ineffective by
failing to secure fingerprint analysis from the firearm that was
presented into evidence at trial.

Green submits that had counsel conducted an independent examin-
ation of the firearm, that his fingerprints would not be found
on same.  this independent examination was required in light of
the facts that (i) no witness ever testified that Green  wore any
gloves when displaying the firearm and (ii) no gloves were found.

The failure of counsel under these circumstances cannot be
deemed reasonable.  See Beasley v. United States, 491 F.2d 687
(6th Cir. 1974)(Trial counsel's failure to retain an independent
expert may constitute ineffective assistance of counsel.)

[H]   TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
      INTERVIEW AND CALL DEFENSE WITNESS(ES)

Movant Green asserts that trial counsel was ineffective by
failing to interview and to call Tanisha Mack to testify before
the jury.

Prior to trial, counsel was provided a copy of the Supplementary
report that was written following an interview of Mack, by law
enforcement.  The report established that Mack was a witness to
and was shown Exhibit 20 and stated that none of the photos depicted
therein was the robber and further that she could possibly identify

-21-

the robber if she ever saw him again. [See Exhibit C] Macks'
testimony could have, and would have, impeached the testimonies
of Linda Graver and other government witnesses. Further, while
numerous witnesses could not positively identify Green from
the photo array, Mack could have provided the jury with a positive
result that Green was not the robber. The jury never heard the
testimony of Mack.

The failure of counsel in this regard cannot be deemed reas-
onable and Green's trial was highly prejudiced by the exclusion
of Mack's testimony. See Henderson v. Sargent, 926 F.2d 706, 711
(8th Cir. 1991)(counsel has a duty to "investigate all witnesses
who may have information concerning his or her client guilt or
innocence."); Moore v. United States, 432 F.2d 730 (3rd. Cir. 1970)
(Trial counsel's failure to prepare for trial and failure to locate
witnesses which could not identify the defendant as the robber
from a line-up, warranted an evidentiary hearing to resolve the
ineffectiveness of counsel claim); Sullivan v. Fairman, 819 F.2d
1382 (7th Cir. 1987).

[I]    TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
       INVESTIGATE BEFORE STIPULATING THAT THE BANK
       WAS INSURED BY FDIC

Trial counsel entered into a stipulation, with the government,
that the bank in question was insured by FDIC. [TR. 806] Trial
counsel did so before conducting any investigation to ascertain
whether the bank was indeed insured by FDIC.

-22-

Green asserts that the omission as set forth was both deficient performance and prejudicial to his defense, case and cause.

The government bears the burden of establishing that the bank was insured by FDIC.  See United States v. Shively, 715 F.2d 260, 265 (7th Cir. 1983)(citing United States v. Platenburg, 657 F.2d 797, 799 (5th Cir. 1981).

Further, trial counsel bears the duty and obligation to insure that the bank was properly insured on the specified date in question, before entering into a stipulation.  See Strickland, (requiring that counsel bring to bear such skills and knowledge as will render the trial a reliable adversarial testing process.)

In the instant case at bar, there was no evidence introduced regarding the issue, and counsel conducted no investigation before stipulating.  had counsel investagated, he would have discovered that the only certificate of insurance status was issued to the Union Savings Bank on January 30, 1992.  [See Exhibit D-1 and D-2]  There exist no evidence to suggest that the bank was so insured on May 8, 2003, date of robbery.

At a bare minimum, trial counsel could have, and should have, questioned Richard Wolfe, Senior Vice President of the bank on the issue.

In Platenburg, the Court reversed a conviction because the only evidence of insurance status was a seven - year old certif-icate.

In Shivey, the Court, in following the Platenburg Court

-23-

reversed where the only evidence was a <u>eleven year old</u> certificate.

In this case, the only evidence was a certificate that was <u>eleven years old</u>.

The failure of counsel to investigate and discover the forestated evidence before entering into the stipulation, cannot be deemed reasonable. Counsel could have, and should have, argued that the certificate was insufficient to satisfy due process requirements. Accordingly, the integrity of Green's trial was impaired by counsel's omission. <u>See Neder v. United States</u>, 525 U.S. 1 (1999)

    [J]  TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO INVESTIGATE AND TO BRING TO THE COURT'S ATTENTION THE <u>BRADY</u> VIOLATION COMMITTED BY THE GOVERNMENT

During the course of trial, Rhonda Craig, a forensic DNA examiner, testified regarding genetic material collected from the blue sweatshirt found beside the gun, goggles, skull wrap and money. Craig testified that Green was the major contributor to DNA found on the sweatshirt, even though it was Debra Deffenbaugh, an FBI technician working under Craig's supervisor, who actually extracted and analyzed the DNA samples from the sweatshirt. The government did not tender any notes or reports prepared by Deffenbaugh.

Green asserts that the failure of trial counsel to investigate and to bring to the court's attention that the government

had witheld exculpatory evidence was both unreasonable and
prejudicial to his trial.  The DNA from the sweatshirt was the
only DNA linked to Green, and the jury heard second-handed infor-
mation about the DNA.

    [K]  TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO

         ADVISE GREEN AS TO WHAT PLEAS SHOULD BE

         ENTERED IN THIS CASE

    Movant Green asserts that trial counsel was ineffective
by (i) failing to advise him of any plea offer of the government,
(ii) failing to advise him as to the strength of the government's
case, (iii) failing to advise him as to the application of the
Federal Sentencing Guidelines to a conviction by entry of guilty
plea or jury verdict, and (iv) by failing to advise him to plead
guilty, under the circumstance.  Green avers that counsel did
none of the above.  [See Affidavit of Movant Green]

    This Circuit has found that "in the ordinary case criminal
defense attorney's have a duty to inform their clients of plea
agreements proffered by the prosecution, and that [the] failure
to do so constitutes ineffective assistance of counsel under
the sixth...amendment[s]".  See Johnson v. Duckworth, 793 F.2d
898, 902 (7th Cir. 1986)

    Further, a trial attorney has a duty to initiate plea neg-
otiations in a defendants behalf, and to offer him the opport-
unity to plead guilty.  SeeJulian v. Bartley, 495 F.3d 487 (7th
Cir. 2007)("A reasonable competent attorney will attempt to learn

all of the facts of the case, make an estimate of the likely
sentence, and communicate the results of that analysis)(citing
Moore v. Bryant, 348 F.3d 238 (7th Cir. 2003)(citing United States
v. Barnes, 83 F.3d 934 (7th Cir. 1996)) See also Duckworth, ("[a]
defense counsel's failure to explore the possibility is inex-
plicable")

     In the instant case at bar, trial counsel failed to advise
Green as to the strength of the government's case and to advise
him to plead guilty, alternatively, to initiate plea negotiations
in the event no plea offer was ever filed.  This is particularly
true in light of the fact the the government was permitted to
introduce exhibit 20, without objections, introduced DNA evidence,
introduced the co-defendant's testimony, and the failure to present
a viable defense.  Under these circumstances, any reasonable
attorney would have sought plea negotiationa, or advised its
client to plead guilty, in light of the overwhelming evidence.

     Green avers that had counsel fully advised him as to the
strength of the government's case, advised him as to possible
sentences involved with a conviction enter by guilty plea or
jury verdict, and advised him as to the application of the Federal
Sentencing Guidelines, that he would have plead guilty.  [See
Affidavit of Green]  This is particularly true in light of the
fact that counsel should have known the results of the co-defendant's
testimony, the DNA, and the witnesses identification of him.

     Although, Green asserts that he is entitled to relief on this

claim, a evidentiary hearing may nontheless be required as the claim is based on evidence outside of the trial record. <u>See</u> <u>Peters c. United States</u>, 159 F.3d 1043 (7th Cir. 1998)(Counsel was ineffective in plea negotiation process and warranted an evidentiary hearing to determine whether petitioner would have accepted the Government's plea offer, which would have resulted in petitioner receiving a less harsh sentence.)

[L]    TRIAL COUNSEL WAS INEFFECTIVE WHEN ADVISING GREEN

NOT TO TESTIFY

Although, the court inquired of Green of his intention to testify, Green advised the court that he would not testify, without the benefit of having a full understanding of the significance of this waiver.  Counsel advised Green that he should not testify. Green complied, not knowing that the decision was his and his alone.  <u>See</u> <u>Rogers v. Lane</u>, 856 F.2d 279, 283 (7th Cir. 1990)

<u>GROUND TWO</u>

### PROSECUTORIAL MISCONDUCT

Green asserts that the prosecutor    committed gross misconduct during the course of trial, clearly intended to insure a guilty verdict.

The prosecutor's duty in a criminal prosecution is to seek justice.  <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935)  Although, the prosecutor should "prosecute with earnestness and vigor" he/she may not use "improper methods calculated to produce a wrongful

conviction." id.

In the instant case at bar, Green asserts that the prosecutor committed misconduct by (i) introducing prohibited 404(b) evidence and failing to tender notes and reports favorable to the defense.

The government introduced Exhibit 20 and the testimonies from numerous witnesses regarding his identification therefrom. Prior to trial, the court had ruled that any evidence from a prior bank robbery may not be used/introduced at trial. Government's Exhibit 20 was a photo array taken during the investigation of the prior robbery, and as such, was excluded. The government not only introduced the exhibit, but solicited testimony therefrom. Green asserts that the introduction of this exhibit was a violation of his constitutional right and a violation of the court's order, all designed to insure a guilty verdict.

Further, the government committed misconduct be failing to tender the notes and/or reports of Deffenbaugh, the FBI technician who collected and analyzed the DNA samples. The results of these tests were introduced through Craig. The failure to disclose the notes denied Green the right to a fair trial. See Brady v. Maryland, 373 U.S. 83 (1963)(holding that the due process requires the prosecutions to disclose evidence favorable to an accused...); United States v. Agurs, 427 U.S. 97, (1976)(prosecutor's constitutional duty to disclose favorable evidence not limited to situations where defendant has requested the evidence.)

-28-

GROUND THREE

## A EVIDENTIARY HEARING IS REQUIRED

Title 28, United States Code, Section 2255 provides that "[A] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.  This Section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make finding of fact and conclusion of law with respect thereto.

id.

Rule 8(a), Evidentiary Hearing, of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that:

> "If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceeding, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."

id.

In the instant case at bar, Movant herein has pleaded, presented sufficient evidence and argued applicable law to demonstrate that his conviction/sentence violates his constitutional rights under the Fifth and Sixth Amendments.

While some of these allegations are supported by the record, many of the material facts are not a part of the "files and records" of this case and require a evidentiary hearing under well settled law. see <u>Townsend v. Sain</u>, 372 U.S. 293 (1993)

In <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003), the Supreme Court ruled trial counsel constitutionally ineffective for failing to conduct a reasonable adequate pretrial investigation. After <u>Wiggins</u>, state and federal courts can no longer deny post conviction motions and habeas petitions based on the assumption that the challenged conduct of defense counsel was tactical or strategic, and can no longer rely on the assumption that the challenged conduct was reasonable. <u>Wiggins</u> indicates the motion court and the habeas court have a duty to ask the attorney to provide an explanation for the challenged conduct, and a duty to make a determination whether the attorney's explanation is reasonable. Movant herein asserts that this may only be effected through a evidentiary hearing.

<u>CONCLUSION</u>

WHEREFORE, based upon the foregoing, Movant herein respectfully request that he be granted the following relief and in these proceedings:

-30-

[1]   vacate, set aside the conviction and order a new

     trial;

[2]   vacate, set aside or correct sentence as requested,

     and/or

[3]   conduct a evidentiary hearing hereon.

Respectfully submitted this _13th_ day of December 2007.

                      ANTHONY GREEN, PRO SE
                      REG. NO. 12450-424
                      FCI-ATLANTA
                      P. O. BOX 150160
                      ATLANTA, GA  30315

## CERTIFICATE OF SERVICE

I, the undersigned, certify that I have on this 13th day of December 2007 served a true and correct copy of the foregoing Memorandum Of Fact And Law In Support Of Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By Person In Federal Custody upon the government, by dropping same in the mail, proper postage affixed thereto and addressed to United States Attorney's Office, Northern District of Illinois,  308 West State Street, Room 300, Rockford, Illinois  61101.

Signed under penalty of perjury this 13th day of December 2007.

ANTHONY GREEN, PRO SE
REG. NO. 12450-424
FCI-ATLANTA
P. O. BOX 150160
ATLANTA, GA  30315

-32-

# EXHIBIT

# A

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

In the Matter of the Search of

710 Cherry Avenue,
Freeport, Illinois

**SEARCH WARRANT**

CASE NUMBER: 03 M 00

TO ROBERT D. MELTON AND ANY OTHER AUTHORIZED OFFICER OR AGENT OF THE UNITED STATES:

Affidavit having been made before me by Federal Bureau of Investigation Special Agent Robert D. Melton who has reason to believe that in the premises and property located at 710 Cherry Avenue, Freeport, Illinois, and further described as a light tan with green trim two-story residence with a front porch located on the west side of Cherry Avenue facing east, with a white storm door facing Cherry Avenue, and with the numerals "710" located on the middle of three posts supporting the front porch, in the Northern District of Illinois, Western Division, there is now concealed certain property and items as described in the attached "Property To Be Seized."

I am satisfied that the affidavit and any recorded testimony establish probable cause to believe that the property so described is now concealed in the property above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before May 14, 2003, the premises and property named above for the property specified, serving this warrant and making the search in the daytime (6:00 A.M. to 10:00 P.M.) and if the property be found there to seize same, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to U.S. MAGISTRATE JUDGE P. MICHAEL MAHONEY as required by law.

May 9, 2003 at _____ at Rockford, Illinois _____
Date and Time Issued                                            City and State

P. MICHAEL MAHONEY, U.S. Magistrate Judge _____
Name & Title of Judicial Officer                         Signature of Judicial Officer

A-1

# PROPERTY TO BE SEIZED

1.  Three (3) $20 bills,

2.  a blue vinyl cover similar to a check book cover but slightly larger, with a clear plastic sheet or insert inside, and the contents thereof,

3.  a hand-written note on a torn piece of paper that included the word, "Money,"

4.  a red shirt or sweatshirt,

5.  documents or containers reflecting the purchase of acquisition of an H & R .22 caliber pistol and all .22 caliber ammunition,

6.  address books, telephone books, and papers reflecting the name and/or telephone number of Nelson Kennedy, and

7.  indicia of ownership and/or occupancy of 710 Cherry Avenue, Freeport, Illinois.

All of which constitute evidence of the commission of or constitute fruits of or which property has been used as the means of committing a violation of 18 U.S.C. §§ 2113(a) and (d), and any and all other documents and instrumentalities which constitute evidence of the commission of or constitute fruits of or which property has been used as a means of committing a violation of 18 U.S.C. §§ 2113(a) and (d).

AO 93 (Rev. 5/85) Search Warrant

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 5/8/03 | 5/8/03   4:00PM | Home |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

Sec ATTached FD- 597

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____    _____
U.S. Judge or Magistrate Judge        Date

A-3

FD-597 (Rev 8-11-94)

73703-000167

## UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # __914-CG-120337__

On (date) ___5/8/2003___

item(s) listed below were:
☑ Received From
☐ Returned To
☐ Released To
☐ Seized

(Name) ___Anthony Green  (Search Warrant)___

(Street Address) ___710 Cherry Avenue___

(City) ___Freeport Il.___

Description of Item(s):

① 2 Pair of blue & white Tennis Shoes
② Drivers License + water Bill
③ Union Savings Book Statements
④ Newell Rubbermaid Earnings Statements
⑤ Blue Check Book Cover
⑥ Misc. Papers From Kitchen shelf + Notebook

Received By: ___[signature]___    Received From: _____
(Signature)                                                    (Signature)

A-4

73703-000168

Page 1 of 1

FD-846 (10-21-98)

# EVIDENCE RECOVERY LOG

Location: 710 Cherry
Date: 5/7/03
Case Identifier: 9/A-CG-120337
Log Preparer: Robert D. Melton
Assistants:

Personnel: Robert D. Melton
ALBERT MARTIN
CURT WITT
JENNIFER MARUS
JANET DUCHOBE
MATT SUMMERS

FBI Reserve 64
ELMHORST POLICE DEPT.

| Item No. | Description | Where Found | Found By | Collected By | Photo | Making Direct-D Indirect-I | Packaging Method | Misc. Comments |
|---|---|---|---|---|---|---|---|---|
| 1 | A Pair of blue & white Tennis Shoes | living room Closet on top of | Jennifer Marus | Robert Melton | Y | | | |
| 2 | Drivers License Water Bill | living Room TV | R Duchocie | Robert Melton | Y | | | |
| 3 | Union Savings Bank Envelope & Contents | on living room Couch | R Melton | R Melton | Y | | | |
| 4 | Newell Rubbermaid Envelope & Contents | #1 living room Closet | Jennifer Marus | R Melton | Y | | | |
| 5 | Blue Cloth Chair Cover | kitchen Cabinet | Curt Witt | R Melton | Y | | | |
| 6 | White Paper Plates Kitchen shelf Cardboard | Kitchen Cabinet shelf | Albert Martin | R Melton | Y | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# EXHIBIT

# B

1
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

2

3   UNITED STATES OF AMERICA,          )      Docket No. 03 CR 50031
                                       )
4                    Plaintiff,        )      Rockford, Illinois
                                       )      Tuesday, December 30, 2003
5              v.                      )      10:00 o'clock a.m.
                                       )
6   ANTHONY GREEN,                     )
                                       )
7                    Defendant.        )

8                          TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE PHILIP G. REINHARD

9

    APPEARANCES:
10
                                       HON. PATRICK J. FITZGERALD
    For the Government:                 United States Attorney
11                                     (308 West State Street,
                                        Suite 300,
12                                      Rockford, Illinois  61101) by
                                       MR. JOHN G. MC KENZIE
13                                     MR. MICHAEL D. LOVE
                                       Assistant U.S. Attorneys
14

15   For the Defendant
     Anthony Green:                    MR. PAUL FLYNN
16                                     Federal Defender Program
                                      (202 West State Street,
17                                      Suite 1104,
                                       Rockford, Illinois  61101)

18
                                       Mary T. Lindbloom
     Court Reporter:                   211 South Court Street
19                                     Rockford, Illinois  61101
                                      (815) 987-4486
20

21

22

23

24

25

1          MR. MC KENZIE:  And I appreciate the court's insights

2     into that, but that might be a risk --

3          THE COURT:  You want to try your own case.

4          MR. MC KENZIE:  I didn't want to say that, your Honor.

5          THE COURT:  You want to lose your own case rather than

6     me lose it for you.

7          MR. MC KENZIE:  I didn't want to say that, your Honor.

8          THE COURT:  All right.  Well, I have a reluctance

9     because I'm not going to question the jurors on that, but I can

10    just tell you my experience is that that has touched a lot of

11    average people, and I just fear that that could cut both ways.

12    And it's not a case, as I've said, of fraud, where there's a

13    long string of why somebody is doing an illegal act to cover for

14    some debt that they owe and the like.  I guess I'll rule on it.

15         MR. MC KENZIE:  Thank you, your Honor.

16         THE COURT:  On that, I think it's a close case.  I

17    think it is marginally relevant under 404(b).  It does establish

18    an issue other than the defendant's propensity to commit the

19    crime, which is motive.  Is it similar enough and close enough?

20    That's not relevant.  Is it sufficient to support a jury finding

21    that the defendant committed the similar act?  Well, it probably

22    is.  The probative value of evidence must not be substantially

23    outweighed by the danger of unfair prejudice.  I am very

24    hesitant.  So, I'm going to on that basis deny the 404(b)

25    evidence.  If you have -- I'll let you revisit that, the

1    government, if they want to, but for now it's barred.

2         Let me take the next issue on the 404(b) evidence, and

3    I'm going to skip to the prior bank robbery as evidence of

4    identity, and I have reviewed both the government's submission

5    on that, as well as the defendant's, and for two reasons I

6    believe that it should not be admitted.  One is that normally

7    this type of evidence to show identity, at least how I've seen

8    it -- and there are probably cases that go to the factual

9    situation similar to this -- but usually it's a case that in the

10   other robbery which is not being charged, you got a clear

11   identification of a defendant who has robbed a place in a very

12   similar fashion, either a particular way in which it's different

13   from the common robbery, either by the method in which it is

14   undertaken or the clothes and mannerisms and the like in the

15   prior robbery are similar to this robbery, but there generally

16   is, the cases I've seen, an identification in the prior, but no

17   identification or weak identification in the case at hand.

18        So, I think there are not enough similarities.  Sure,

19   we pointed out a single robber with a gun with glasses with a

20   hat.  He was alone.  He actually wasn't alone here.  He was

21   alone in the robbery, but there was a guy -- a codefendant was

22   waiting outside.  It's not the distinctive type of

23   identification that I have seen in other cases.

24        But, more importantly, allowing this evidence would, in

25   my opinion, be a greater prejudice -- the probative value of the

1   evidence is substantially outweighed by the danger of unfair

2   prejudice by a prior robbery.  Therefore, that will be denied.

3         Now, as to Green's use -- it would be the evidence

4   regarding the defendant's use of crack cocaine as evidence of

5   motive.  As far as this issue is concerned, I don't know whether

6   the defense, if Kennedy takes the stand, is going to bring out

7   any relationship to the Defendant Green as it pertains to drug

8   use.

9         MR. FLYNN:  I'm not sure I understand the question,

10   your Honor.  Am I going to ask him questions about whether or

11   not he uses drugs?

12         THE COURT:  That's right.

13         MR. FLYNN:  I don't intend to at this point.

14         THE COURT:  Well, that --

15         MR. FLYNN:  I mean, because --

16         THE COURT:  If you bring it out, a relationship that

17   he's a drug user -- and I don't know that you can -- that's one

18   issue.  Just because a person uses it doesn't mean that you can

19   cross-examine him.

20         MR. FLYNN:  Right.

21         THE COURT:  You can cross-examine him if the use is

22   such that he was addicted at the time and it may have affected

23   his memory either at that time when he was assisting in the bank

24   robbery or whether he's -- and he's not an addict clearly now

25   because he's incarcerated.  So, if you're trying to prove that

# EXHIBIT

# C

# FREEPORT POLICE DEPARTMENT
## SUPPLEMENTARY REPORT

| Report # 03-9777 | Date of Report 5/8/03 | Report by Det. M. Summers |
|---|---|---|
| **Victim** Union Savings Bank | **Offense** Armed Robbery | **Suspect(s)** Anthony Green, Nelson Keith Kennedy |

This investigative report reflects the contents of an interview with **Taneisha N. Mack, DOB** ▓▓▓/75, ▓▓▓▓▓▓▓, **PH#** ▓▓▓▓▓▓▓▓, in regard to the above listed case.   This interview was conducted by Det. Summers on 5/8/03 at Union Saving Bank south branch.

I spoke to Taneisha, who was present at the time the robbery occurred at Union Savings Bank. Taneisha stated that she was in the parking lot, when a person that she described as a dark-complected black male, approximately 5'11" to 6', with a slim build, wearing a red dew rag and dark safety glasses, rushed past her into the building. She stated that when she saw the person, it reminded her of a person she knew who had the street name of "Mop." Taneisha did not know his real name but she knew he moved things around Freeport. She stated that when she entered the building, she saw this same person turn from a teller station and he had two large stacks of money in his hand. She saw him run out of the building and up an embankment and run across South St. Taneisha stated she might be able to identify the person if she ever saw him again.

Later in the day at approximately 7:30 p.m., detectives went to Taneisha's residence and showed her a photo line-up consisting of the following people:

    1: Lashawn Thurman
    2: Damon Davis
    3: Anthony Green
    4: Kenneth Reed
    5: Jason Cain
    6: Jermaine Tidwell

Taneishia looked at the Line-up and said that she could not be sure if the person that she observed go into the bank was one of the pictures that she was looking at. Taneisha did say that she thought that she would be able to identify the person if she saw him in person again.

**03-9777b**

| Detective | Date | Supervisor Approval | Date |
|---|---|---|---|
| *Matthew S—* | 05/08/03 | Sgt. Curt Witt | 05-23-03 |

# EXHIBIT

# D

DUPLICATE

# FEDERAL DEPOSIT INSURANCE CORPORATION

### W A S H I N G T O N ,  D. C.

Hereby certifies that the deposits of each depositor in

## UNION SAVINGS BANK

## FREEPORT

## ILLINOIS

are insured to the maximum amount provided by the
Federal Deposit Insurance Act

No: **29121**

Attest: _Shirley S. Reisman_

EXECUTIVE SECRETARY

In testimony whereof, witness my signature and the seal of the
Corporation this **30TH** day of **JANUARY, 1992**

CHAIRMAN OF THE BOARD OF DIRECTORS

73703-001145

D-1

73703-001142

EXCERPTS FROM FDIC RECORDS

| | |
|---|---|
| <u>Institution name</u> | Union Savings Bank<br>223 WEST STEPHENSON STREET<br>FREEPORT<br>IL 61032-0000 |
| <u>Insurance date</u> | 08/09/1989 |
| <u>Certificate #</u> | 29121 |
| <u>Actions</u> | Converted from an insured savings and loan association to an insured mutual savings bank with title change to "Union Savings Bank", effective 01/30/1992. |
| <u>Actions</u> | Union Loan Savings and Savings Association, Freeport, IL, was admitted to membership in the FDIC on 8/9/89, the date upon which savings associations, the accounts of which were insured by the Federal Savings and Loan Insurance Corporation on the prior day, became insured depository institutions of the FDIC pursuant to section 4(a) of the Federal Deposit Insurance Act, 12 U.S.C. 1814(a). |
| <u>Classification</u> | Insured stock or mutual savings bank |
| <u>Fund</u> | SAIF |

EXHIBIT "A"