UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 07 C 50247 |
| | ) | (No. 03 CR 50031) |
| ANTHONY GREEN | ) | Judge Philip G. Reinhard |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT
SENTENCE FILED UNDER 28 U.S.C. § 2255**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United

States Attorney for the Northern District of Illinois, responds to defendant Anthony Green's

28 U.S.C. § 2255 motion and supporting memorandum (hereinafter referred to as Def.

Motion and Def. Memo, respectively) filed on December 26, 2007.

**GREEN'S CLAIMS**

Green claims his trial attorney, Paul Flynn, was ineffective, and that the government's

attorney committed prosecutorial misconduct. Def. Motion at 4-7; Def. Memorandum at 9-

28. As set forth below, Green's prosecutorial misconduct claims were raised, and rejected,

on direct appeal, and should not be reconsidered. Even if reconsidered, those issues are

without merit. The defendant's claim of effective assistance of counsel fails to establish

either deficient performance or prejudice and should be denied.

**SUMMARY OF PROCEEDINGS**

Green and Nelson Kennedy were charged with the May 8, 2003 robbery of the Union

Savings Bank in Freeport, Illinois, and with several firearms-related charges. R. 15. Paul

Flynn represented Green before the district court. Green's pretrial motion and supplemental motion to suppress identification testimony were denied. *United States v. Green*, 2003 WL 22431940 (USDC ND IL); R. 24, 25, 41, 53. The district court also denied the government's request to introduce evidence that Green had previously robbed a different Union Savings Bank branch on August 3, 2000, and no evidence of that prior bank robbery was introduced at trial. 12/30/03 Tr. 8-9. The jury found Green guilty of all counts (R. 84, 86), and the Court sentenced him as an Armed Career Criminal to 384 months in prison. R. 92.

Attorney Robert A. Handelsman represented Green on appeal. Green raised numerous issues in Mr. Handelsman's issues brief, in Green's response to Mr. Handelsman's motion to withdraw and *Anders* brief, and in Green's *pro se* supplemental brief. The Seventh Circuit rejected all but one of Green's claims, and remanded the case for resentencing in accordance with *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). *United States v. Green*, No. 04-1723 (7th Cir. Oct. 11, 2005) (unpublished order) (hereinafter *Green I*). Of Green's non-*Paladino* issues, the Seventh Circuit stated that only three "merit[ed] discussion."[1] *Id.*

---

[1]   The issues the Seventh Circuit addressed and rejected were: (1) whether the pretrial identifications were unnecessarily suggestive; (2) whether Green's right to confrontation was denied by the testimony of FBI DNA examiner, Rhonda Craig, and whether Green should have been given the reports and notes of Debra Deffenbaugh, an FBI DNA technician who worked under Craig's supervision in physically extracting the DNA from clothing; and (3) whether cross-examination of Kennedy was unduly restricted. Green's claims that the Seventh Circuit found not to "merit discussion" were: (1) introduction of evidence of his prior bank robbery; (2) limiting cross-examination of Kennedy's prior statements; (3) Green's Fifth Amendment right was violated; (4) his Career Offender status; and (5) a Guidelines enhancement for use of a firearm which the Court had not applied.

After remand, this Court ruled that knowing that the Guidelines are advisory and not mandatory, it would reimpose the same sentence. The Seventh Circuit affirmed the defendant's sentence, and Green's petition for a writ of certiorari was denied. *United States v. Green*, 185 Fed.Appx. 519 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1167 (2007).

## THE GOVERNMENT'S RESPONSE

On December 28, 2007, the court ordered the government to respond to Def. Motion. The undersigned Assistant calendared the event in his 2007 calendar and began obtaining documents necessary to prepare a response. When transferring matters from the 2007 calendar to the 2008 calendar, entries for responses to all motions filed pursuant to 28 U.S.C. § 2255 were inadvertently not carried over. Because of the number of crack resentencing matters assigned to the undersigned Assistant, the Assistant has not yet conducted a case review in 2008, which would have disclosed the lack of calendaring. The undersigned Assistant has changed his calendaring procedure to ensure the mistake does not reoccur, and apologizes to the Court and the defendant for not filing a timely response. In light of the facially meritless nature of Def. Motion, the government asks that it be allowed to respond.

**1.    Green's Claims of Prosecutorial Misconduct Were Decided Against Him on Direct Appeal and Should Not Be Reconsidered.**

Relief under 28 U.S.C. § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where an error represents a fundamental defect in the proceeding which inherently results in a complete miscarriage of justice. *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994); *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir.

3

1998).  It is not a substitute for a direct appeal nor an avenue for a second appeal.  *Reed v.*

*Farley*, 512 U.S. 339, 354 (1994).  Absent a change in circumstances, issues raised on direct

appeal may not be reconsidered on a § 2255 motion.  *Varela v. United States*, 481 F.3d 932,

935 (7th Cir. 2007); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).  Green's

claim that the government introduced evidence of his prior bank robbery was raised, and

rejected, on direct appeal.[2]  *See* United States Brief, No. 04-1723 (filed July 5, 2005), at 23-

25; *Green I* at 4 (other issues raised did not "merit discussion").  As Green has not claimed

any change in circumstances that would justify reconsideration of the issue, this Court should

decline to reconsider this aspect of Green's claim of prosecutorial misconduct.

The claim fails factually as well.[3]  Green claims evidence of his prior bank robbery

came in through Government Exhibit 20 and the testimony of witnesses who viewed that

photo array.  Def. Memorandum at 28.  This Court ordered that the government could not

introduce evidence of the defendant's commission of the prior bank robbery (12/30/03 Tr.

8-9).  It did not bar use of a photograph of the defendant taken on a prior occasion for any

other purpose.  There was no evidence at trial linking the defendant's photograph with the

prior bank robbery, and no evidence of the prior bank robbery was elicited at trial.

---

[2]  Although Green claims he did not raise his claim of prosecutorial misconduct on direct appeal because the "factual or legal basis" for the claim was not available (Def. Motion at 7), he did raise this same issue on direct appeal.  Moreover, all of the facts alleged by Green to be the basis for his claim were well known to him prior to his appeal.

[3]  The prior bank robbery was committed on August 3, 2000, while the photograph in Government Exhibit 20 was taken on July 30, 1999.  R. 61, p. 7; Tr. 415.

In his direct appeal, Green claimed the government failed to turn over notes of FBI DNA technician Debra Deffenbaugh. *See* United States Brief, No. 04-1723 ( filed July 5, 2005), at 23-25; *Green I* at 5. The Seventh Circuit found that Green failed to demonstrate plain error in the admission of DNA expert Craig's testimony, including the use of Ms. Deffenbaugh's notes. *Green I* at 5. As in the present Def. Motion, "Green [did] no more than speculate that [Deffenbaugh's notes] would have assisted him, and fail[ed] to explain how he was prejudiced by not gaining access to them." *Id.*

Craig testified that Deffenbaugh's notes reflected the use of a sterile swab to run the areas of the clothing that came into contact with the skin. Tr. 784. Defendant counsel neither requested Deffenbaugh's notes nor subpoenaed her, and there was no indication in the cross-examination of Craig that Deffenbaugh's notes would have been favorable to Green or that anything out of the ordinary was contained in the notes. The record does not reflect that the notes were exculpatory, much less "material" to the defense. Even if the notes were relevant, missing a minor impeachment opportunity does not mean the result would have been different or render the outcome unfair. *United States v. Wilson*, 134 F.3d 855, 867 (7th Cir. 998); *Kavanagh v. Berge*, 73 F.3d 733, 737 (7th Cir. 1996).

**2.    Green's Claim of Ineffective Assistance of Counsel**

Normally, a defendant may not raise issues under § 2255 that were not raised on direct appeal unless he can demonstrate both good cause – a legally cognizable excuse for his procedural default – and actual prejudice resulting from the error, or show that refusal to

consider the issue would result in a fundamental miscarriage of justice. *Reed, supra*; *United States v. Frady*, 456 U.S. 152, 167-68 (1982). However, most claims of ineffective assistance of counsel should be brought in a § 2255 motion. *United States v. Martinez*, 169 F.3d 1049, 1052 n. 4 (7th Cir. 1999); *United States v. McCleese*, 75 F.3d 1174, 1178 (7th Cir. 1996). Green's claim of ineffective assistance of counsel, while without merit, is properly raised under § 2255.

The burden of demonstrating ineffective assistance of counsel rests squarely with Green who must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* As the Supreme Court has noted, there is a "natural tendency to fault an unsuccessful defense," one that courts must "counteract." *Nix v. Whiteside*, 475 U.S. 157, 165 (1986). Otherwise,

> [c]riminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one on counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

*Strickland*, 466 U.S. at 690. Thus, the *Strickland* Court set a stringent standard to be applied to claims of ineffective assistance of trial counsel.

6

In attempting to meet the "performance" prong, the defendant "must overcome a strong presumption that his counsel met an objective level of competence." *United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989) (citing *Strickland*, 466 U.S. at 689). Courts grant "every indulgence 'to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight.'" *Bond v. United States*, 1 F.3d 631, 635 (1993) (quoting *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir. 1991)).

Under the "prejudice" prong, a defendant must demonstrate "errors so serious that counsel was not functioning as the 'counsel.'" *Strickland*, 466 U.S. at 687. "It is not enough to show that errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, a defendant must show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *United States v. Donaldson*, 978 F.2d 381, 394 (7th Cir. 1992) (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)). Thus, even "unreasonable error" on the part of counsel will not warrant setting aside the judgment unless the outcome of the proceeding would have been different. *Stewart v. Lane*, 60 F.3d 296, 303 (7th Cir. 1995). Green fails to meet this "heavy" burden. *United States v. Reiswitz*, 941 F.2d 488, 495 (7th Cir. 1991).

A.    *Failing to Adequately Present a Motion to Suppress a Search*

Green claims Mr. Flynn was ineffective in presenting the motion to suppress, and that Mr. Flynn should have noted that the date in the return of the search warrant precedes the

7

date the warrant was issued.  Compare Def. Memorandum Exhibits A-1 and A-5 (warrant evidence recovery log dated May 9, 2003) with Exhibits A-3 and A-4 (return and inventory dated May 8, 2003).  The government responded to the motion noting that the return and inventory had been misdated.  R. 32.  Later, the government withdrew its objection insofar as the motion related only to any items seized on May 8, 2003, at the defendant's residence, and the Court granted the motion.[4]  Tr. 10/17/03 at 8-9.  In any event, Green has not shown that any evidence obtained during any search of the defendant's residence was introduced at trial.[5]  Having won the motion to suppress, Mr. Flynn's performance was not ineffective.

Even assuming Mr. Flynn's performance fell below an objective standard of reasonableness, Green cannot show "errors so serious that counsel was not functioning as the 'counsel.'"  *Strickland*, 466 U.S. at 687. Regardless of how Mr. Flynn viewed the May 9, 2003, search, it had no impact upon trial, much less "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Donaldson*, 978 F.2d at 394 (quoting *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990)).

B.    *Failing to Object to the Introduction of Government Exhibit 20*

Green complains Mr. Flynn failed to object to the introduction of Government's Exhibit 20, stating that his photo was evidence of the August 3, 2000 robbery.  Def.

---

[4]  As the government noted, no search was conducted on May 8, 2003.  Tr. 10/17/03 at 8.

[5]  From his own recollection and a review of the transcript of the trial and the government's trial exhibit list, the undersigned Assistant does not believe any evidence resulting from a search of the defendant's residence was admitted into evidence at trial.

Memorandum at 12.  As noted above, on direct appeal the Seventh Circuit found this issue to be so lacking in merit as to not warrant discussion.  *Green I* at 4.

The prior bank robbery was committed on August 3, 2000, while the photograph in Government Exhibit 20 was taken on July 30, 1999.  R. 61, p. 7; Tr. 415.  Thus, it could not have been evidence, or even derived from evidence, of the bank robbery.  Moreover, at trial the photograph was never linked in any way to a prior bank robbery.  Counsel is not ineffective for not making a frivolous objection. *Duarte v. United States*, 81 F.3d 75, 76 (7th Cir. 1996) (motion to suppress).

C.    *Failing to Object to Identification Testimony and Government Exhibit 20*

Green complains Mr. Flynn was ineffective for not objecting to identifications made using Government Exhibit 20.  His attorney objected to the use of the photographic arrays and the identification of the defendant.  This Court denied the motion.  R. 53.  The issue of identification was also one of the three issues that the Seventh Circuit mentioned.  It, like this Court, found that the photo array was not unnecessarily suggestive.  *Green I* at 4.

D.    *Failing to Investigate and Interview Witnesses*

Green alleges his attorney failed to interview government's witnesses before trial and that because of such, failed to discover impeachment material.  Def. Memorandum at 15-16.  Where a defendant claims his attorney failed to investigate and locate witnesses for trial, he must make a comprehensive showing of what facts an additional investigation would have uncovered or what testimony the witnesses would have given *and* present such in affidavit

form. *Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987); *Wright v. Gramley*, 125 F.3d 1038, 1043 (7th Cir. 1997); *Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990). Green must make a showing of what impeachment material was not obtained, and he has failed to do so. For this reason alone, his claim should be rejected.

Even if Green could show a deficiency, he must also establish a "reasonable probability" that the deficiency affected the trial's outcome. *United States v. Morrison*, 946 F.2d 484, 500 (7th Cir. 1991) (failure to call unidentified witnesses). The effect must be such that it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Donaldson*, 978 F.2d at 394. By failing to identify the substance of the witnesses' purported testimony, Green has not shown prejudice.

E.    *Failing to Object to the Testimony of the FBI DNA Expert*

Green claims Mr. Flynn was ineffective for allowing Rhonda Craig, the FBI's DNA expert, to testify and to violate Green's Sixth Amendment right of confrontation, particularly as it related to Ms. Deffenbaugh. Green raised the Confrontation Clause issue in his direct appeal and the Seventh Circuit rejected his claim. *Green I* at 5.

F.    *Failing to Demand Notes Prepared by an FBI DNA Technician*

Green complains that Mr. Flynn was ineffective for failing to demand notes prepared by Ms. Deffenbaugh. Again, the issue of any reports or notes that may have been prepared by Ms. Deffenbaugh was raised by Green in his direct appeal as a part of his Confrontation Clause argument. Ms. Craig testified that Ms. Deffenbaugh's notes reflected a clean sterile

10

cotton swab was used to rub areas of the clothing that would have come into contact with the skin. Tr. 784. There was no indication in the cross-examination of Ms. Craig that Ms. Deffenbaugh's notes would have been favorable to Green or that anything out of the ordinary was contained in those notes. Even if attorney Flynn should have requested Ms. Deffenbaugh's notes, there is nothing to suggest that Green was prejudiced or the trial result was affected by any lapse.

G.    *Failing to Obtain a Fingerprint Expert to Examine the Firearm*

Green complains his attorney was ineffective for not obtaining a fingerprint analysis of the revolver. Def. Memorandum at 21. Green stated, and the government does not disagree, that his fingerprints were not found on the revolver. Actually, no fingerprints useful for comparison purposes were found on the revolver.[6] According to Green, his counsel should have obtained an expert witness to testify to that effect. Such testimony would have had a marginal effect at best.

The burden is on Green to establish a "reasonable probability" that the failure to call a fingerprint expert affected the trial's outcome. *United States v. Morrison*, 946 F.2d 484, 500 (7th Cir. 1991). The lack of usable fingerprints on an item is rarely probative, particularly since fingerprints are so fragile and are often not found in usable form on items, particularly firearms. *See, e.g., United States v. Burdeau* 168 F.3d 352, 357 (9th Cir. 1999) (various

---

[6] No usable latent prints suitable for comparison were found on the .25 caliber pistol or ammunition possessed by Kennedy, Green's revolver or its cylinder and ammunition, the two parts of the gray sunglasses or the plastic safety glasses found near the bank money, or Kennedy's 12 gauge shotgun.

explanations why identifiable fingerprints might not exist). Having an expert testify that no usable fingerprints were found on an item does not mean that the item was not possessed or transported. It only means that for one or more of a multitude of reasons, no usable fingerprints could be located on the item.[7] This neutral evidence does not rise to the level required in order to prevail on a claim of ineffective assistance of counsel – that but for the "unreasonable error" on the part his counsel, the outcome of the proceeding would have been different. *Stewart v. Lane*, 60 F.3d at 303. A "conceivable effect on the outcome" in not enough. *Strickland*, 466 U.S. at 693. For this reason, Green's claim falls short and should be denied.[8]

H.    *Failing to Call Tanisha Mack as a Defense Witness*

Green alleges Mr. Flynn was ineffective for failing to interview and call Tanisha Mack to testify. Def. Memorandum at 21-22 and Exhibit C. Prior to the robbery, Ms. Mack saw a dark-complected black male with a slim build, and wearing a "red dew rag" and safety glasses, go into the bank. After Ms. Mack entered the bank, she saw the same man turn from the teller station and run out of the bank with money in his hand. Ms. Mack told police she

---

[7] While Green claims that a lack of fingerprints on the gun would be inconsistent with his guilt (the tellers did not notice the bank robbery wearing gloves and no gloves were found next to the bank robbery proceeds, clothing and pistol), the lack of prints on the various items would also be consistent with the defendant having wiped off his fingerprints.

[8] Moreover, the court may consider the nature and strength of the government's case. *Id.* The government's case against Green was extremely strong including the testimony of his get-away driver, eyewitness identification by the bank teller, and his DNA found on clothing used by the robber and found next to the bank robbery proceeds.

might be able to identify the robber.  That evening, she viewed a photographic array that contained Green's photograph.  She said she could not be sure if the robber was in the array, but that she thought she would be able to identify the robber if she saw him in person.[9]

Again, Green fails to make a comprehensive showing of what facts an additional investigation would have uncovered (*Cross v. DeRobertis*, *supra*) or what testimony Ms. Mack would have given.[10]  Even if Green could show a deficiency, he must also establish a "reasonable probability" that the alleged failure to investigate affected the trial's outcome. *United States v. Morrison*, 946 F.2d 484, 500 (7th Cir. 1991) (failure to call unidentified witnesses).

I.      *Failing to Ascertain Whether the Bank's Deposits Were FDIC Insured*

Green complains attorney Flynn was ineffective for stipulating that the deposits of the Union Bank were insured by the FDIC at the time of the robbery, without conducting an investigation into the matter.  Attorney Flynn already had received a copy of the complaint and affidavit originally charging Green with bank robbery.  Included in that complaint is an affidavit from an FBI Special Agent stating that he had been advised by bank officials that the deposits of the bank were insured at the time of the robbery.  Attorney Flynn was justified in relying upon that.

---

[9] Green's description of the interview of Ms. Mack is understandably slanted.  Compare page 21 of the Def. Memorandum with its Exhibit C.

[10] In light of Ms. Mack's statement that she thought she would be able to identify the robber if she saw him in person, defense counsel's decision not to call her and risk ending his case with a eyewitness who might well identify his client as the robber was a wise decision.

However, Green's claim can be disposed of as he again fails to make a comprehensive showing of what facts an additional investigation would have uncovered *Cross v. DeRobertis*, *supra*. Claiming that his attorney should have questioned a Senior Vice President about the FDIC insurance does not satisfy this burden. He must make a showing that the deposits were not insured by the FDIC or some other strong showing that would cause a legitimate question to be raised about the insurance of the deposits.

Green's citations to cases discussing the amount of evidence that would be sufficient to prove the bank's deposits were insured by the FDIC in inapposite. The question is not how much proof was offered – the defendant stipulated to the fact – but whether his attorney's performance was deficient and whether he was prejudiced by that. Green fails to demonstrate either.

J.    *Failing to Advise the Court of a Discovery Violation by the Government*

For the third time, Green raises Ms. Deffenbaugh's notes as an issue, this time to complain that his attorney did not notify the Court that the government had violated its obligation to provide the defendant with exculpatory evidence. Again, the issue was considered by the Seventh Circuit and found to be wanting. *Green I* at 5.

Green fails to identify any evidence that was not produced that was favorable to him. To show a due process violation under *Brady* and *Giglio*, a defendant must establish: (1) the government suppressed evidence; (2) the evidence was favorable to the defense; and (3) the suppressed evidence was material. *Abbott v. United States*, 195 F.3d 946, 948 (7th Cir. 1997).

14

The only document discussed is Ms. Deffenbaugh's notes that she used a clean sterile cotton swab to rub areas of the clothing that would have come into contact with the skin. Tr. 784. There was indication that Ms. Deffenbaugh's notes were favorable to Green or that anything out of the ordinary was contained in the notes. Green's hope that additional materials may exist does not establish prejudice. *United States v. Boyles*, 57 F.3d 535, 551 (7th Cir. 1995) (conclusory allegations do not establish prejudice prong of *Strickland*); *United States v. v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990) (same).

K.    *Failing to Advise Green Concerning a Guilty Plea*

In the context of a possible guilty plea, Green claims Mr. Flynn was ineffective for failing to advise Green: (i) of any plea offer from the government; (ii) of the strength of the government's case; (iii) of the application of the Sentencing Guidelines after either a guilty plea or a jury's verdict; and (iv) that he should plead guilty under the circumstances. Def. Memorandum at 25. In support of this aspect of Def. Motion, Green submitted an affidavit which supported his claims concerning a guilty plea (hereinafter "Def. Affidavit"). The affidavit also contained opposite statements: had Green known of the strength of the government's case, he would have pleaded guilty, followed by the claim that he proceeded to trial because he thought he no other choice. Def. Affidavit, ¶¶ 7-8. Finally, the affidavit claims that Mr. Flynn never advised Green of Green's right to testify.[11] Def. Affidavit, ¶ 9.

---

[11] As set forth below, after the Court advised Green of his right to testify, Green stated that he had discussed that right with his attorney and that it was Green's own decision not to testify. Tr. 812-813.

"[T]he Sixth Amendment right to effective assistance of counsel extends to assistance rendered when deciding whether to reject a plea offer." *Almonacid v. United States*. 476 F.3d 518, 521 (7th Cir. 2007).  The government agrees with Green that a reasonable attorney will attempt to learn the facts of a case, make a good faith estimate of the likely sentence, and communicate that analysis to the client. *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007) (citations omitted).  Accuracy of the estimate is not required and it is presumed that the estimate "'falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004).

However, even where the defendant can demonstrate deficient performance, he must also demonstrate prejudice.  In this context, he much show that but for the deficient performance, he would have accepted a plea agreement (assuming for the moment that one had been offered) offered by the government.  *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).  A mere self-serving statement by a defendant, which is all that Green offers, that he would have accepted a plea agreement offer is insufficient to demonstrate prejudice.  *Id.* *See also Johnson v. Duckworth*, 793 F.2d 898, 902, n. 3 (7th Cir. 1986).  That alone is sufficient to doom Green's claim.  However, as noted below, there are additional reason.

(i)      The existence of a plea offer from the government

Green begins by claiming that Mr. Flynn for failing to inform Green of a plea agreement offered by the government.  While, an attorney has the duty to inform the client of a plea agreement offered by the government and to involve the client in the decision-

16

making process (*United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996)), that premise is inapplicable here: no plea agreement was ever offered by the government.  The only mention at all of a plea agreement for Green was in a letter from the government to Mr. Flynn sent shortly after indictment in which the government discussed discovery for several pages and then briefly mentioned the timing of any possible plea agreement.  As no offer, firm or otherwise, was ever extended by the government, Mr. Flynn's duty to inform Green of an offer was never implicated.

(ii)    The strength of the government's case

Green next claims that Mr. Flynn did not advise Green of the strength of the government's case and initiate plea negotiations.  The argument presupposes that the government would entertain plea negotiations.  Green was not only a Career Offender under the Sentencing Guidelines, but an Armed Career Criminal as well.  On top of that, he was facing a mandatory consecutive sentence of 60 months for using a firearm during the bank robbery.  The government was not interested in having a violent criminal like Green escape punishment.

Green notes that Mr. Flynn could have advised Green to plead guilty.  However, even had Green entered into a "blind" plea agreement without an offer from the government, he is unable to show that he would have a received a more favorable sentence by virtue of a three-level reduction for acceptance of responsibility under Guideline 3E1.1. A timely guilty plea by itself does not entitle a defendant to the reduction in his offense level.  *United States*

*v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002). A mere possibility of a lower offense level is not enough to demonstrate *actual* prejudice.

(iii)    The application of the Sentencing Guidelines

Green adds to his argument that had he known of the Sentencing Guidelines, he would have pleaded guilty. As noted above, upon conviction he would be (and was) sentenced as a Career Offender and an Armed Career Criminal. No plea agreement would have changed that. Any hope for a reduction in his offense level for acceptance of responsibility is just that: hope. It does not take the place of demonstrating actual prejudice.

(iv)    A recommendation of a guilty plea

Green claims Mr. Flynn never recommended that Green plead guilty. Assuming such to be true, "[w]hen counsel advises the defendant to reject a plea offer, his performance is not objectively unreasonable unless such advice is made 'in the face of overwhelming evidence of guilty and an absence of viable defenses." *Almonacid*, 476 F.3d at 521 (quoting *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005)). While the government's evidence of Green's guilt was strong, it was not overwhelming, leaving Green with no viable defenses. The get-away driver, Kennedy, was wide open to impeachment for a wide variety of reasons. Part of the clothing found with the bank proceeds, while containing the defendant's DNA, also contained lesser amounts of DNA from another individual, making it likely that another person used the clothing. Eye-witness identification, while important, can and was attacked based upon a variety of factors. Without an offer from the government

18

to cooperate, Mr. Flynn's recommendation to proceed to trial, if such a recommendation was made, was not outside the wide range of reasonable professional assistance. *Id.*

L.    *Advising Green Not to Testify*

Green's final claim is that he was not adequately advised regarding his decision not to testify, that Mr. Flynn "advised Green that he should not testify," and that "Green complied, not knowing that the decision was his and his alone."[12] Def. Memorandum at 27. The Court questioned both Mr. Flynn and Green about Green's decision not to testify:

| | |
|---|---|
| THE COURT: | All right.  We're going to proceed with the defense.  Before you proceed, is the defendant going to testify. |
| MR. FLYNN: | No, your honor. |
| THE COURT: | I'm going to address you, Mr. Green, just so that you understand.  You know that you have a right to testify, if that's what you want to do. |
| DEFENDANT: | Yes, your honor. |
| THE COURT: | And you've discussed that with your attorney? |
| DEFENDANT: | Yes, your honor. |
| THE COURT: | And you've made the decision not to testify; is that correct? |
| DEFENDANT: | Yes, your honor. |

Tr. 812-813.  The Court was not required to question Green about the decision not to testify.

*United States v. Stark*, 507 F.3d 512, 516 (7th Cir. 2007).  There is nothing in the record

---

[12]  Normally to maintain an attack such as, the defendant would have to submit specific affidavits that refrain from generalities.  *Taylor v. United States*, 287 F.3d 658, 660-661 (7th Cir. 2002).  However, Green's claims themselves, even if supported by affidavits, are inadequate.

indicating Green was unaware he could testify.  The Court first advised him that he had the right to testify and then ensured that it was Green that had made the decision not to testify.

Green alleges that Mr. Flynn advised him not to testify.  That is the purpose of counsel: to give advice, particularly in trial strategy, even though the final decision to testify lies with the defendant.  *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704 (1987).  This is not the same as Mr. Flynn preventing Green from testifying.  It is only where a defendant is prohibited from testifying by his lawyer (or by a judge) that his constitutional rights have been violated.  *Taylor*, 287 F.3d at 661.  Green further states that he was unaware that the decision to testify was his and his alone.  Again, the focus is on whether Green was prevented from testifying and even accepting Green's allegations, as unbelievable as they might be, he was not prevented from testifying.

**3.    Lack of Need for an Evidentiary Hearing.**

This court, having presided over Green's trial, is "uniquely suited to determine if a hearing [is] necessary."  *Patel v. United States*, 19 F.3d 1231 (7th Cir. 1994).  Green is entitled to an evidentiary hearing only where he alleges facts, that if proven, would entitle him to relief.  *Stoia*, 22 F.3d at 768.  As stated above, the issues may be resolved without the need for an evidentiary hearing.  *McCleese v. United States*, 75 F.3d 1174, 1182 (7th Cir. 1996) (§ 2255 motion may be dismissed without evidentiary hearing where record conclusively demonstrates the defendant is not entitled to relief).

20

## CONCLUSION

For the reasons set forth above, Green's § 2255 Motion should be denied.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney


BY:  /s/ John G. McKenzie
JOHN G. McKENZIE
Assistant United States Attorney
308 West State Street - Rm. 300
Rockford, Illinois   61101
(815) 987-4444

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**United States' Response to Defendant's
Motion to Vacate, Set Aside, or Correct
Sentence Filed under 28 U.S.C. § 2255**

was served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first-class mail on April 16, 2008, to the following non-ECF filers:

> Anthony Green
> No. 12450-424
> FCI Atlanta
> P.O. Box 150160
> Atlanta, GA 30315

    */s/ John G. McKenzie*
JOHN G. McKENZIE
Assistant United States Attorney
308 West State Street - Room 300
Rockford, Illinois 61101
(815) 987-4444